UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

POHLMAN, INC.,                              )
                                           )
            Plaintiff,                      )
                                           )
      vs.                                   )        Case No.  4:03CV01241 AGF
                                           )
SMALL BUSINESS ADMINISTRATION,              )
and HECTOR V. BARRETO, in his official      )
capacity as Administrator of the Small      )
Business Administration,                    )
                                           )
            Defendants.                     )

## MEMORANDUM AND ORDER

This action brought under the Freedom of Information Act (FOIA), 5 U.S.C.

§ 552, is before the Court on the parties' cross motions for summary judgment.[1]  For the

reasons set forth below, each motion shall be granted in part and denied in part.

## BACKGROUND

Plaintiff Pohlman, Inc., (Pohlman) is a Missouri corporation.  Defendant Small

Business Administration (SBA) is a United States Government agency that is subject to

FOIA.  Defendant Hector Barreto is sued in his official capacity as the Administrator of

SBA.  Defendants will hereafter be referred to collectively as SBA.  In 1994, SBA made a

disaster relief loan to Pohlman (Loan #6376323007) in the amount of $19,256,800 to

---

[1]     The parties have consented to the exercise of authority by the undersigned
United States Magistrate Judge under 28 U.S.C. § 636(c).

assist in recovery from the Missouri River flood of 1993.[2]  In the late 1990s, SBA was

directed by the federal Office of Management and Budget (OMB) to sell at public auction

loans which SBA had made.  In accordance with this mandate, SBA developed its Loan

Asset Sale Program, which involved the marketing and public sale of segments of SBA's

loan portfolio to qualified purchasers.  SBA grouped these loans in pools and permitted

review of the loan portfolio by prospective qualified bidders in order for them to develop

their bidding strategy and bids.  By September 21, 2004, SBA had conducted seven loan

sales, selling in excess of 167,500 loans.  Pl.'s Ex. B (Decl. of Richard Blewett, Director

of SBA Asset Sales).

     Under the Loan Asset Sale Program, Pohlman's loan was placed in Pool AB 204

of Sale #4.  The Bidder Information Package for Sale #4 noted that the approximate size

of the portfolio was $1,234,000,000.  The package also stated as follows:

> At its sole and absolute discretion, the SBA reserves the right to
> disclose information regarding the Sale, including the identity of Buyers
> and the successful Bid Price or Bid Percentage, upon the consummation of
> the Sale.  Even if the SBA elects not to disclose publicly any information
> relating to the Sale, the SBA will have the right to disclose any information
> the SBA is obligated to disclose pursuant to the Freedom of Information
> Act and all regulations promulgated thereunder.

Pl.'s Ex. 1 to Resp.  In August 2001, Pool AB 204 and several other loan pools in Sale #4,

comprising a total of 3,381 loans, were sold to Capital Crossing Bank for $220,932,423.

     By letter dated May 29, 2002, Pohlman requested from SBA, pursuant to FOIA,

"copies of all documents, reports, analyses, correspondence and memoranda . . . whether

---

[2]    SBA states in its memorandum in support of its motion for summary judgment
that this loan was one of the largest ever made by SBA.

prepared by the [SBA] or by the SBA's independent contractors or advisors, and whether for the SBA's internal use, for publication or prepared by any other party and is [sic] in the possession of the SBA, relating to SBA Sale #4."  Pl.'s Ex. 1.  In an attachment, Pohlman outlined with greater specificity the documentation sought.

By letter dated November 1, 2002, SBA told Pohlman which documents it was providing, which documents it promised to provide in the immediate future, and which documents or parts thereof it was withholding as confidential under Exemption 4 of FOIA.  Pl.'s Ex. 5.  Exemption 4 protects from disclosure "trade secrets or commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  Information that a party was legally obligated to submit to the government is "confidential" under this exemption if its disclosure would likely (1) impair the government's ability to obtain necessary information in the future, or (2) cause substantial harm to the competitive position of the person who provided the information.  Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974) (widely accepted test known as the National Parks test).[3]

SBA described the withheld documents as follows:

•     Documentation regarding the estimated market value for each loan and loan pool in Sale #4, including the methods of valuation;

•     All unsuccessful bids for each individual loan and loan pool in Sale #4.

---

[3]     SBA does not assert that any information involved in this case was "privileged" under Exemption 4.  That term refers only to privileges created by the Constitution or the common law, such as the attorney-client privilege and the marital privilege.  See Sharyland Water Supply Corp. v. Block, 755 F.2d 397, 400 & n.16 (5th Cir. 1985).

- All documentation prepared by SBA in connection with each winning bid, including allocation of sale proceeds to individual loans;

- All documentation relating to statistical information formulated by SBA or its advisors regarding the discount received for each loan and loan pool in Sale #4.

Pl.'s Ex. 5.

By letter dated December 12, 2002, Pohlman appealed SBA's decision to SBA's Freedom of Information/Privacy Acts Office (FOI/PA Office). Pohlman challenged the decision to withhold the withheld documentation and stated that it had not yet received the promised documents. Pl.'s Ex. 7. Under FOIA, a determination on an administrative appeal is to be made within 20 working days. 5 U.S.C. § 552(a)(6)(A)(ii). On January 21, 2003, the FOI/PA Office notified Pohlman that it was invoking an extension of time due to "unusual circumstances" pursuant to § 552(a)(6)(B) to complete the appeal. Pl.'s Ex. 9. This section allows for an extension of ten working days and requires notice to the appellant specifying the date on which a determination would be made. Here, the notice to Pohlman did not specify any date on which a determination would be made.

Pohlman filed this action on September 3, 2003, for declaratory and permanent injunctive relief, requiring SBA to produce all withheld information related to Sale #4. Pohlman also seeks attorneys' fees and costs under FOIA, § 552(a)(4)(E). Pohlman asserts in its complaint that it has exhausted all administrative remedies because, as of the time the complaint was filed, the FOI/PA Office had not yet processed Pohlman's appeal. Pohlman claims that the withheld documentation is not covered by Exemption 4, and that SBA did not provide the promised documentation. In its answer, SBA asserts that

Pohlman did not exhaust all administrative remedies because Pohlman's appeal was still pending, and that the withheld documentation is covered by Exemption 4.

By letter dated October 30, 2003, SBA informed Pohlman that SBA was producing 2,370 pages of information responsive to his FOIA request.[4]  SBA also listed which documents were redacted and which were being withheld in full, as follows:

(1)     Attachment I to the Bid Confirmation Letter (to Capital Crossing Bank) dated August 9, 2001, signed by Arnold Rosenthal (an SBA official), redacted to provide only information related to Pohlman's loan, and to withhold "bid percentages" (the percentage of the unpaid balance of a loan pool that the bid price for that pool represented);

(2)     Nine documents with due diligence information regarding Pohlman's loan, withheld in full; and twelve such documents, withheld in part, including a "CAT Sheet" dated January 30, 2001;

(3)     Attachments I and II to the Bill of Sale executed on August 21, 2001, for lender serviced loans of SBA Sale #4, redacted to withhold information related to loans other than Pohlman's;

(4)     Schedule A of the Bill of Sale executed on August 21, 2001, for SBA serviced loans of SBA Sale #4, redacted as above;

(5)     Loan Schedule A to the Assignment and Assumption Agreement executed on

_____

[4]     SBA asserts that these documents were provided on October 30, 2003; Pohlman asserts that SBA did not send the documents on that date, that Pohlman had to ask again for SBA to provide the documents, and that SBA sent them on December 16, 2003.  There is no dispute that the documents were, in fact, provided.

August 21, 2001, between SBA and Capital Crossing Bank, redacted as above;

(6)     Attachment I to the Loan Sale Agreement between SBA and Capital Crossing

         Bank, redacted as above and redacted to withhold information concerning bid

         percentages.

Pl.'s Ex. 10.

On November 12, 2003, the FOI/PA Office sent Pohlman a response to its

December 12, 2002 appeal.  The FOI/PA Office listed the following matters as still at

issue, along with its disclosure determinations as to each matter.

1.     Market Valuation for  Sale #4 prepared by Myerberg &  Co., L.P.
       (Meyerbeg), withheld in full pursuant to Exemption 4.

2.     "Winning Bids by Bidder" document for Sale #4, withheld in part
         pursuant to Exemptions 4 and 5;

3.     Statistical information formulated by SBA, including:

       a.  SBA memo dated July 31, 2001, from Mr. Rosenthal to Mr. Barreto,
           withheld in part pursuant to Exemption 5;

       b.  Minutes of the Asset Sales Advisory Committee dated August 8, 2001,
           released in full;

       c.  SBA memo dated August 8, 2001, from Mr. Rosenthal to Mr. Barreto,
            withheld in part pursuant to Exemptions 4 and 5;

       d.  SBA memo to OMB dated June 27, 2002,[5] withheld in part pursuant to
           Exemptions 4 and 5;

---

[5]     In its letter to Pohlman, the FOI/PA Office mistakenly noted the date of this
memo as July 27, 2002.

   e. SBA memo dated June 28, 2001, from Fred Rubin to Mr. Rosenthal,
     released in full.

Pl.'s Ex. 11.

   As indicated, the FOI/PA Office invoked not only Exemption 4, but also

Exemption 5, for some of the information being withheld.  Exemption 5 allows an agency

to withhold "inter-agency or intra-agency memorandums or letters which would not be

available by law to a party other than an agency in litigation with the agency."  5 U.S.C.

§ 552(b)(5).  This exemption, called the "deliberative-process exemption," applies to

information "that would normally be privileged in civil discovery."  <u>Dep't of the Interior</u>

<u>v. Klamath Water Users Protective Ass'n</u>, 532 U.S. 1, 5 (2001).

   On December 15, 2003, Pohlman filed an appeal with the FOI/PA Office.  Pl.'s

Ex. 12.  On March 19, 2004, the FOI/PA Office furnished an additional 44 pages of

documentation, but upheld SBA's October 30, 2003 decision in other respects.  The

arguments of the parties will be presented below, document-by-document, as to those

documents Pohlman asserts remain at issue at this point in the proceedings.  At Pohlman's

urging, and pursuant to the Court's request, SBA has submitted these documents for the

Court's in-camera inspection.  SBA's more general arguments raised in its own motion for

summary judgment will then be presented, followed by the Court's analysis.[6]

---

   [6] Pohlman asks the Court to require assurances from SBA that SBA has fairly
identified all materials responsive to Pohlman's FOIA request.  The Court takes the
government at its word that it has done so.

# ARGUMENTS OF THE PARTIES

## I.  Market Valuation for Sale #4 Prepared by Myerberg

In preparing this 17-page document, Myerberg acted as "Transaction Financial Advisor" for Sale #4.  The document groups the loan pools in Sale #4 into blocks and outlines multiple valuation methods employed by Myerberg, each based on certain enumerated assumptions, and lists the estimated market values of each pool.

Pohlman argues that Exemption 4 (the only exemption asserted at the administrative level) does not apply to this document, because Myerberg is a consultant working for SBA and thus the document was not "obtained from a person," as required by Exemption 4.  Pohlman argues alternatively that SBA did not meet its burden of showing that the release of this document would impair SBA's ability to obtain necessary information in the future, or cause substantial harm to the competitive position of the persons from whom the information was obtained.

SBA responds that the document is exempt under Exemption 5 as an "inter-agency or intra-agency communication," because Myerberg was paid for the purpose of giving advice to SBA; and that the market valuations in the document were the basis for SBA's hold value estimates[7] and contain critical advice to the agency.  With respect to Exemption 4, SBA argues that if agencies could not maintain the confidentiality of proprietary materials submitted by private parties, the agencies' ability to obtain such information would be impaired.

_____

[7]     The hold value of a loan is the current value of the loan to SBA if the loan were held to maturity or some other resolution, such as prepayment or default.

Pohlman replies that Exemption 5 does not apply, because SBA does not argue that the factual information in this document would actually show how SBA formulated its hold values, and because the factual information does not constitute the give and take necessary to qualify as part of the deliberative process. Pohlman notes that SBA cannot rely on both Exemption 4 and Exemption 5 for the same information, as the former applies to matters obtained from a person outside the government, while the latter applies to inter-agency or intra-agency matters. Pohlman reasserts that Exemption 4 does not apply here because the document was not obtained from an outside source.

## II. The Assigned Bid Percentages, Assigned Bid Prices, and Unpaid Balances Redacted from Sale #4 "Winning Bids by Bidder"

In the 6-page "Winning Bids by Bidder" document provided to Pohlman, the above-noted figures as they applied to each of the 80 pools in Blocks 1, 2, and 3 were redacted. SBA did not redact the aggregate bid percentage, bid price, and unpaid balance as to each Block, nor as to each of the 11 pools in the Designated Loan Pools category. Pohlman argues that Exemption 4 does not apply to the redacted figures because they were created by SBA, and thus were not "obtained from a person." Pohlman further argues that SBA's conclusory assertions that disclosure of this information may result in bidders offering lower bids in the future does not satisfy SBA's burden under Exemption 4. Pohlman maintains that disclosure of this information would not cause substantial harm to the competitive position of the bidders from whom the information was obtained, because the information would not lead to the discovery by competitors of these bidders' bidding strategy and valuation methodology. Pohlman argues that Exemption 5 does not

apply here, because the document was created after SBA made the decision awarding the bids and therefore was not part of SBA's deliberative process.

SBA responds that the withheld information was submitted by bidders and was thus "obtained from a person" for the purpose of Exemption 4. SBA asserts that disclosure of the redacted information on a pool-by-pool basis would provide the bidders' competitors an unfair advantage in future loan sales by revealing the bidding philosophy and strategy of the current bidders. According to SBA, disclosure would also cause substantial harm to the government, because potential bidders who do not wish to have their bidding techniques analyzed by competitors would not bid on future loan sales.

III.  Documentation Prepared in Connection with Pohlman's Loan, Showing the Payments and Balances Owed by Capital Crossing Bank for the Loan

SBA redacted four figures from a document -- figures which the parties agree relate to how much Capital Crossing Bank paid for, and owes on, Pohlman's loan. Pohlman argues that these figures are not part of the deliberative process, as they were created after SBA made the decision awarding the bids. As above, SBA responds that the redacted figures would permit competitors to calculate the bid percentage paid by Capital Crossing Bank, and thus, the figures are exempted under Exemption 4 because they could cause competitive harm to the bank. SBA also argues that these documents are protected by Exemption 5 as inter-agency or intra-agency communications which would not be available by law to a party other than an agency in litigation with SBA.

Pohlman replies that the information in question was obtained from the bidder and does not qualify as inter-agency or intra-agency communications under Exemption 5.

Pohlman also argues that SBA does not support its allegation that the information is not available to a party other than an agency in litigation with SBA.

## IV.  Part of an SBA Memo Dated July 31, 2001, from Mr. Rosenthal to Mr. Barreto That Related to Bids in Past Sales and Options for Sale #4

Three typed lines were redacted from this document.  The redacted information relates to bids in past sales generally and outlines options open to SBA should the bids received for Sale #4 be lower than SBA's hold values.  Pohlman argues that SBA improperly relied on Exemption 5 to redact the information, because financial information about past sales does not qualify as part of the deliberative process.  SBA responds that Exemption 5 applies, because the past bids were used in the evaluation process to recommend approval or disapproval of bids for Sale #4.  SBA also argues that Exemption 4 applies, because disclosure of the redacted information would give competitors an unfair advantage in future loan sales by permitting them to understand the bidding strategy and valuation techniques of the past bidders, and would harm SBA because potential bidders who do not want information about their bids disclosed would not participate in future loan sales, causing a drop in SBA's return on future sales.

Pohlman replies that allowing SBA to rely on Exemption 5 would encourage SBA to insert past factual information into reports in order to subvert FOIA.  Pohlman also argues that Exemption 4 does not apply, because SBA did not sustain its burden of demonstrating that disclosure would be harmful to either SBA or the bidders.

V.  Parts of an SBA Memo Dated August 8, 2001, from Mr. Rosenthal to Mr. Barreto about Sale #4, Involving the Hold Values of Loans in Comparison with the Price They Sold for ("Recommended Bids")

This seven-page document provides the recommendations of SBA's Asset Sales Advisory Committee that SBA sell the loans in the sale to a specified list of bidders (including Capital Crossing Bank), noting which pools these bidders bid for as well as the bidders' total bids.  Redacted from the copy of this document provided to Pohlman were three figures -- the total hold value of Disaster Loans, the total hold value of General Business Loans, and the sum of those two figures.  Pohlman argues that the hold values are produced by SBA and do not qualify as material "obtained from a person" for purposes of  Exemption 4.  Pohlman also argues that these hold values are factual information which do not reveal the consultative or deliberative process and, therefore, Exemption 5 does not apply.  In addition, Pohlman argues that the withheld information does not qualify as pre-decisional, because SBA approved the action suggested by the memo on the same date the memo was written.

SBA responds that it considers the redacted information to be inter-agency or intra-agency communication, and that hold value information is "inextricably intertwined" with SBA's decision making.  SBA states that releasing hold values would reveal the facts selected by SBA's decision-makers in deciding the bottom-line estimates SBA expected to receive for each pool.  With respect to Exemption 4, SBA argues that consultants should be able to give their opinions freely without fear of publicity, or that their proprietary information will be released.

Pohlman replies that because the hold value is a final number that the SBA

12

determined before the sale, it is not pre-decisional as required for Exemption 5. Pohlman also argues that the hold values are not protected by Exemption 4 because they are established by SBA and not obtained from a person.

## VI. Four Pages from an SBA Document Dated June 27, 2002, to OMB, Describing the Loans to be Sold in Sale #4, Their Estimated Hold Values, the Estimated Net Sale Proceeds, and the Estimated Modification Costs; and Part of the Last Page Regarding Previous SBA Loan Sales

The document in question, which is marked as "Confidential," was generated prior to the final bid date for Sale #4 and provides OMB with descriptions of the loans to be sold, including their current payment status; the estimated hold values of the loans; the estimated net sale proceeds; the estimated modification cost; and a summary of previous loan sales. This information was redacted from the copy of the document provided to Pohlman. The total unpaid balance of the loans in Sale #4, and the total number of loans were not redacted. Pohlman argues that Exemption 4 does not apply here, because the withheld information was not "obtained from a person" but was created by SBA. Pohlman also argues that SBA did not demonstrate how release of any information that may have been obtained from others would impair SBA in the future or competitively harm the submitter. Pohlman argues that Exemption 5 does not apply, because this memo contains factual information regarding Sale #4 that SBA submitted to the OMB and does not appear to be part of the consultative process.

SBA responds that the information about previous loan sales is confidential and protected under Exemption 4. SBA argues that the other information withheld is protected by Exemption 4, because it is information of a kind that "would customarily not

be released to the public by the person from whom it was obtained."  This test for

determining whether a document is confidential under Exemption 4 was formulated in

Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 878 (D.C.

Cir. 1992) (en banc) (Critical Mass), to apply where a party "voluntarily" submits

financial or commercial information to the government.  SBA also asserts that the

redacted information is protected by the Privacy Act, 5 U.S.C. § 552a.[8]  SBA also invokes

Exemption 5, claiming that the information in question was part of SBA's deliberative

process with regard to Sale #4 and constitutes inter-agency or intra-agency

communications.  SBA states that the document was prepared based upon information

submitted by Whitestone Capital Group, Inc., (Whitestone) (the "Program Financial

Advisor") and Myerberg, who were paid for their services for the purpose of giving

advice to SBA in its decision-making analysis.

Pohlman replies that Exemption 4 does not apply, because the redacted

information was not "obtained from a person" but was generated by SBA.  Pohlman

further argues that the information required from bidders in order to participate in the

bidding process is governed by the National Parks test, and not the Critical Mass test.

Pohlman also argues that the Privacy Act does not apply because that act, by its terms, 5

U.S.C. § 552a(b)(2), does not apply if disclosure would be required under FOIA.

Pohlman argues that SBA cannot rely on Exemption 5 without giving a detailed

---

[8]    This section prohibits an agency from disclosing its records without the
consent of the individual to whom the record pertains, unless disclosure would, among
other things, be required under FOIA.

explanation of how this exemption applies to each specific matter in question.

VII.  The One-Page Attachment to an SBA Memo Dated June 28, 2001, from Fred Rubin (SBA Office of Financial Analysis) to Mr. Rosenthal and Mr. Blewett (Director of SBA Asset Sales), Containing the Valuation of Loans for Sale #4 as of April 30, 2001

The document in question was prepared for SBA's presentation to OMB at a meeting scheduled for July 7, 2001.  Mr. Rubin stated in the cover memo that the pricing was based upon "the new model developed with Price Waterhouse Coopers."  Pohlman argues that the document does not appear to contain the give and take of the consultative process required for application of Exemption 5, but rather only factual information to be presented to OMB.  SBA responds that the attachment was part of the deliberative and pre-decisional process.  SBA states Price Waterhouse Coopers was paid by SBA for the purpose of giving advice to SBA in its decision making on Sale #4.  SBA argues that this information is an inter-agency or intra-agency communication and was utilized in SBA's decision making, and that SBA has special need for the advice of consultants who should be able to give their judgment freely without fear of publicity or disclosure.

VIII.  Attachment to the Bid Confirmation Letter Dated August 9, 2001, from Mr. Rosenthal to Capital Crossing Bank Showing the Assigned Bid Percentages for 19 Loan Pools Awarded to Capital Crossing Bank

Pohlman states that it is unclear whether the bid percentages in the confirmation letter were created by SBA or another source.  If they were created by SBA, then they were not "obtained from a person" and SBA cannot invoke Exemption 4.  If they were not created by SBA, then SBA has not demonstrated that disclosure would impair SBA's ability to obtain bids on future loan sales or would result in substantial competitive harm to bidders.  SBA responds that Exemption 4 applies, because the bid percentages are

confidential commercial/financial information submitted to SBA by the bidders and disclosure would be competitively harmful to both the winning bidder and SBA. Pohlman once again replies that SBA has provided only general declarations which are inadequate to sustain its burden to withhold the information.

## IX.  Part of the CAT Sheet Dated January 30, 2001

Of the 21 documents listed in Attachment I, Pohlman states that it only takes issue with the CAT Sheet, from which a section measuring approximately 2" x 4" was blocked out.  Pohlman argues that SBA did not provide any explanation why it was withholding this information under Exemption 5.  Pohlman also asks the Court to require assurances from SBA that the documents listed in Attachment I are the only due diligence materials in SBA's possession with respect to Pohlman's loan in preparation for Sale #4. The redacted information consists of a handwritten note.  SBA asserts that it was written by an SBA manager and reflects his deliberative opinions.  Pohlman replies that SBA's lack of detail in its explanation precludes application of Exemption 5.

## X.  Attachment 2 and Schedule A to the Bill of Sale Between SBA and Capital Crossing Bank Dated August 21, 2001, Showing Information on a Loan-by-Loan Basis

These documents were redacted with respect to all loans except Pohlman's.  The documents list the following information as to each loan, which is identified by its redacted number:  pool number, gross outstanding balance, SBA interest rate, bank interest rate, payment amount, and next due date.  Pohlman argues that it is entitled to the information with respect to all loans, not just its own, and that SBA has not shown that release of the information would impair its ability to obtain bids on future loans.  SBA

argues that the loan number for each individual loan and the above information as to each loan is the "kind of information that would customarily not be released to the public by the person from whom it was obtained."  SBA also argues that information on outstanding debts, amount in arrears, days behind, etc., is credit information protected by the Privacy Act.

### SBA's Motion for Summary Judgment

In its own motion for summary judgment, SBA argues that due to Pohlman's failure to amend its complaint after SBA provided additional documents, only two issues remain for review by the Court:  SBA's withholding (1) the price paid by Capital Crossing Bank for Pool AB 204; and (2) the unsuccessful bids received for Pool AB 204.  SBA repeats in general terms its Exemption 4 and Exemption 5 arguments raised above.  In addition, SBA argues for the first time that Exemption 3 protects disclosure of the bids received by unsuccessful bidders.  Exemption 3 exempts from disclosure matters that are "specifically exempt from disclosure by another statute."  5 U.S.C. § 552(b) (3).  SBA relies upon 41 U.S.C. § 253b(m) (the Federal Property and Administrative Services Act of 1949), which provides that contractor proposals may not be released by executive agencies.

In support of its motion for summary judgment, SBA submits the declarations of Lisa Babcock, Chief of SBA's FOI/PA Office, and Mr. Blewett.  A second declaration was submitted by Ms. Babcock in response to Pohlman's motion for summary judgment. The declarations submitted in support of its own motion for summary judgment essentially review the procedural history of Pohlman's FOIA request and set forth the

arguments raised in SBA's pleadings.  Pohlman responds that SBA cannot reduce the case to two general issues, and that all the information still sought by Pohlman is at issue. Pohlman also argues that SBA cannot invoke Exemption 3 for the first time in its motion for summary judgment, and that, in any event, 41 U.S.C. § 253b(m) applies only to government procurement contracts, and not sales contracts.

Regarding Exemption 4, Pohlman argues that even though information is commercial or financial, SBA cannot conclude, without citing any supporting evidence, that the information will reveal the bidders' bidding philosophy and valuation techniques to a competitor.  Pohlman also argues that some of the documents were created by SBA or its outside consultants, and so do not qualify for Exemption 4 protection.  Pohlman maintains that the declarations of Ms. Babcock and Mr. Blewett are conclusory and general.  Furthermore, the cases cited by SBA concern voluntary information submitted to the Government, and not involuntary information as is involved in this case.  Pohlman also points to the warning on the Bidder Information Package for Sale #4 that information regarding the sale, including bid prices and bid percentages, may be released.

SBA replies that it is not barred from invoking Exemption 3 in litigation merely because that exemption was not cited at the administrative level.  SBA also asserts that the declarations of Ms. Babcock and Mr. Blewett are based upon their expertise, which the Court should accept, as Pohlman has not furnished any opposing affidavits or evidence of these experts' bad faith.  SBA argues that the warning on the bidding package "does not reveal the SBA's intent to determine every document is subject to release." Reply Br. at 7.

# **DISCUSSION**

## **Statutory Framework and Standard of Review**

"Upon request, FOIA mandates disclosure of records held by a federal agency, see 5 U.S.C. § 552, unless the documents fall within enumerated exemptions, see § 552(b). These limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act, consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass." Klamath, 532 U.S. at 7-8 (quoted cases omitted); see also Davis v. CIA, 711 F.2d 858, 861 (8th Cir. 1983) ("disclosure, not secrecy, is the dominant objective of the Act, and the Act's nine exemptions from compelled disclosure are to be narrowly construed").

FOIA provides for de novo review by a district court of an agency decision to withhold requested information, and places the burden on the agency to demonstrate that a claimed exemption applies. 5 U.S.C. § 552(a)(4)(B); In re Dep't of Justice, 999 F.2d 1302, 1305 (8th Cir. 1993). Where the pleadings and affidavits or declarations show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, summary judgment under Federal Rule of Civil Procedure 56(c) is the appropriate mechanism for resolving FOIA disclosure disputes. Ctr. for Pub. Integrity v. Dep't of Energy, 191 F. Supp. 2d 187, 191 (D.D.C. 2002); TRIFID v. Nat'l Imagery & Mapping Agency, 10 F. Supp. 2d 1087, 1090 (E.D. Mo. 1998).

## **Exemption 4**

As noted above, Exemption 4 protects "commercial financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).

Information that a party was legally obligated to submit to the government is "confidential" under this exemption if its disclosure would likely (1) impair the government's ability to obtain necessary information in the future, or (2) cause substantial harm to the competitive position of the person who provided the information. Nat'l Parks, 498 F.2d at 770. It is clear that this test applies to information submitted by bidders for Sale #4 loans/pools. See TRIFID, 10 F. Supp. 2d at 1098 (National Parks test for withholding information, rather than less stringent Critical Mass test, applies to information a party is required to submit to the government in order to participate in a competitive bidding program). Similarly, the National Parks test applies to information submitted to SBA by the borrowers of the loans in Sale #4, as the borrowers were required to submit the information in order to obtain the loans.

Obtained from a Person

It is also clear that information prepared by Myerberg or Whitestone was not information "obtained from a person" for purposes of Exemption 4. See, e.g., Benson v. GSA, 289 F. Supp. 590, 594 (W.D. Wash. 1968), aff'd, 415 F.2d 878 (9th Cir. 1969) (appraisal prepared by an outside appraiser for GSA's use was not "obtained from a person"). Furthermore, loan information generated by SBA in the course of its involvement with its borrowers is not information "obtained from a person." See Buffalo Evening News, Inc. v. SBA, 666 F. Supp. 467, 469 (W.D.N.Y. 1987).

Competitive Harm

SBA supports its withholding of much of the information still sought based on its generalized assertion that its disclosure would cause substantial harm to the Sale #4

bidders by allowing their competitors to uncover the bidders' valuation methodologies. Courts have viewed such arguments with skepticism, generally requiring agencies to disclose information unless they are able to demonstrate that release of the information would be of "substantial assistance" to competitors in estimating and undercutting a bidder's future bids.  See Ctr. for Pub. Integrity, 191 F. Supp. 2d at 194 (agency was not entitled to withhold its records relating to bids in sale of government land under Exemption 4 on ground that disclosure was likely to cause harm to competitive position of bidders, where agency failed to show that information would be of substantial assistance to competitors in estimating and undercutting bidders' future bids; rejecting agency claim that information would allow competitors to uncover the bidders' valuation methodology); see also McDonnell Douglas Corp. v. U.S. Dep't of the Air Force, 375 F.3d 1182, 1195 (D.C. Cir. 2004) (in the context of requests for line-item prices in bids for government contracts, competitive harm to bidders results "only if a competitor is able to 'reverse-engineer' from the winning bidder's price to the sensitive strategic information upon which it is based, such as the contractor's profit margin and cost data"); Brownstein Zeidman & Schomer v. Dep't of the Air Force, 781 F. Supp. 31, 33 (D.D.C. 1991) (same). Here, SBA has not met this standard.

In addition, the Court notes the warning on the Bidder Information Package for Sale #4, specifically informing bidders that "information regarding the sale, including the identity of Buyers and the successful Bid Price or Bid Percentage," might be disclosed upon the consummation of the sale.  It seems disingenuous of SBA to now reject a FOIA request for this information on the ground that disclosure would harm the competitive

position of the bidders.

Impairment of SBA's Interests

SBA argues that disclosure of much of the information obtained from bidders and sought by Pohlman would deter bidders from participating in future loan sales.  The Court finds this argument unpersuasive.  When submission of information is mandatory in order to participate in a government program, there is a presumption that the government's interest in obtaining information in the future will not be threatened by disclosure.  Nat'l Parks, 498 F.2d at 770; see also 1 James T. O'Reilly, Federal Information Disclosure § 14:87 (3d ed. 2000) ("Chilling or deterrence of future submitter sharing of records with the agency does not apply where a mandate of submission is a prerequisite to a transaction for which the records must be delivered to the agency.").

SBA offers no evidence in support of its affidavits which states that the claimed harm would occur, such as affidavits from past or potential bidders.  The Court does not find the three affidavits submitted by SBA on this point to be the kind of detailed, nonconclusory affidavits upon which courts have relied in granting an agency summary judgment in FOIA cases.  Cf. Miller v. U.S. Dep't of State, 779 F.2d 1378, 1387 (8th Cir. 1985) (agency's affidavits explained in detail why requested material might damage national security, entitling agency to rely on FOIA's national security exemption).  Furthermore, the Court cannot discern any harm to the future of SBA's loan sale program that might result from disclosing information bidders are told might be disclosed.

The Court reaches the same result with regard to the four figures relating to how much Capital Crossing Bank paid for and owed on Pohlman's loan on a particular date, as

well as Attachment 2 and Schedule A identified above.  See Miami Herald Publ'g Co. v. SBA, 670 F.2d 610, 614-15 (5th Cir. 1982) (records containing names of firms that received SBA advances and showing amounts and balances, and records of loans to borrowers showing status of loans were not confidential for purposes of Exemption 4); Buffalo Evening News, Inc., 666 F. Supp. at 468-71 (same).  The Court notes that the loans in Attachment 2 and Schedule A do not identify the borrowers by name -- only by loan number.

## Exemption 5

The Court first concludes that the market valuations and reports by independent outside consultants qualify as intra-office or intra-office communications for purposes of Exemption 5.  See Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 78 & n.2 (2d Cir. 2002) (reports prepared by disinterested outside consultants for an agency qualify as intra-office communications, noting that this conclusion is suggested in Klamath, 532 U.S. at 12); Hoover v. U.S. Dep't of the Interior, 611 F.2d 1132, 1138 (5th Cir. 1980) (appraisal reports prepared by independent consultants for agency estimating the value of property to be condemned by the agency was an intra-agency document).  The Court must therefore decide whether the following documents or parts of documents are exempt from disclosure as information that was part of SBA's deliberative process:  (1) the Market Valuation prepared by Meyerberg; (2) the three typed lines from the SBA memo dated July 31, 2001; (3) the three hold value figures from the SBA memo dated August 8, 2001; (3) the attachment to the SBA memo dated June 28, 2001, containing SBA's Office of Financial Analysis's valuation of loans in Sale #4; (4) the four pages from the SBA

document dated June 27, 2002, to OMB, describing the loans to be sold in Sale #4; (5)

part of a page from the June 27, 2002 document regarding previous SBA loan sales; and

(6) the handwritten notation on the January 30, 2001 CAT Sheet.

The Eighth Circuit has stated as follows with regard to the policy considerations

underlying Exemption 5:

> It is generally agreed that two basic policy considerations govern the scope
> of exemption 5:  (1) preventing premature disclosure of agency records that
> might impede the proper functioning of the administrative process; and (2)
> eliminating the inhibition of a free and frank exchange of opinions and
> recommendations among government personnel which could result from
> routine disclosure of internal communications.

North Dakota v. Andrus, 581 F.2d 177, 180 (8th Cir. 1978).  To qualify under Exemption

5, information must be "both predecisional and deliberative."  Missouri v. U.S. Army

Corps of Eng'rs, 147 F.3d 708, 710 (8th Cir. 1998).

> A predecisional document is one that is designed to assist agency
> decisionmakers in arriving at their decisions and which contains the
> personal opinions of the writer rather than the policy of the agency.  A
> document is deliberative if its disclosure would expose the agency's process
> in a way that would discourage candid discussion and thus undermine the
> agency's ability to perform its functions.

Id. (memo by acting deputy director of agency which candidly critiques the development

of agency policy was covered by Exemption 5).

Exemption 5 does not apply to factual matters, unless they are "inextricably

intertwined" with predecisional policy discussions.  Enviro Tech Int'l, Inc. v.  EPA, 371

F.3d 370, 375 (7th Cir. 2004) (citing EPA v. Mink, 410 U.S. 73, 87-88 (1973)).  The

factual/opinion distinction is not always easy to apply, especially in a case like the

present one in which the government agency is acting as a commercial/financial entity,

rather than as a policy maker. Upon careful consideration and review of the documents, the Court believes that the inter-agency and intra-agency communications that describe how SBA arrived at the hold values in question, as well as the hold values themselves, are exempt from disclosure. The hold values are not SBA's final decisions in themselves, nor simply factual information, as Pohlman variously suggests. Rather, the hold values are the agency's own bottom line estimates reflecting what the agency believes its assets are worth. These hold values are subjective determinations based on a myriad of factors, which in turn are based on underlying valuations and methodologies selected by SBA and/or its consultants. The hold values are used internally by the agency in the process of making its decisions with regard to the approval of bids. Per the unrefuted affidavit of Ms. Babcock, the government does not release these hold values or estimates. Defs.' Ex. C, ¶ 8.

Exemption 5 "is designed to protect agency policy-oriented judgments and the processes by which policies are formulated." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 39 (D.C. Cir. 2002). The Court believes that the hold values and the methods used by SBA to arrive at them are just such judgments and processes. See Brownstein Zeidman & Schomer, 781 F. Supp. at 34 (report containing "bases and reasons" for agency's decision to select winning bidder for a computer procurement contract was covered by Exemption 5, especially as it was not clear that report was incorporated in agency's final decision; agency, however, had to disclose standards used to evaluate bid proposals).

To the extent that hold values or valuations used to arrive at a hold value are

factual rather than opinion, the information is exempt from disclosure because it is "inextricably intertwined" with SBA's policy decisions regarding which bids to accept for the pools/loans in Sale #4.  Cf. Nat'l Ass'n of Home Builders, 309 F.3d at 39 (D.C. Cir. 2002) (Exemption 5 did not apply to site-specific information about the habitat of a species of owls prepared to assist agency in making its determination that species was endangered; although information was predecisional, it was not deliberative, as it did not reflect the agency's "preliminary positions or ruminations about particular policy judgment").  Accordingly, the Court does not believe that SBA must disclose this information.

The Court also concludes that the redaction of the handwritten notation is covered by Exemption 5, as the notation represents an internal personal opinion.  The Court does not believe, however, that the three typed lines redacted from SBA memo dated July 31, 2001, qualify for Exemption 5 protection.  The information withheld is factual, historical information, and SBA has not persuaded the Court that it is inextricably intertwined with the decision-making process.

**Exemption 3**

The Court agrees with SBA that it is not precluded from relying upon Exemption 3 simply because SBA did not do so at the administrative level.  See Young v. CIA, 972 F.2d 536, 538-39 (4th Cir. 1992) (an agency does not waive FOIA exemptions by not raising them during the administrative process).  Nevertheless, Exemption 3 does not avail SBA as the statute relied upon, 41 U.S.C. § 253b(m), applies only to government procurement contracts, not to sales contracts as involved in this case.  See Ctr. for Pub.

Integrity, 191 F.2d at 192-94 (records related to the federal government's sale of land were not exempted from disclosure under Exemption 3 by operation of § 253b(m)).

**Privacy Act**

SBA invokes the Privacy Act to support its withholding of information about loans other than Pohlman's. As Pohlman notes, the Privacy Act does not protect information that must be disclosed under FOIA. 5 U.S.C. § 552a(b)(2). Thus, if no FOIA exemption applies, the agency cannot also invoke the Privacy Act to block release of information that is the subject of a FOIA request. Campaign for Family Farms v. Glickman, 200 F.3d 1180, 1187 & n.7 (8th Cir. 2000); 2 O'Reilly, § 20.58.

**Attorney's Fees**

FOIA provides that a district court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred" in an action in which the plaintiff "has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). Among the factors which a court should consider when determining a prevailing litigant's entitlement to attorney's fees under FOIA are: (1) the benefit to the public to be derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law. Miller, 779 F.2d at 1389.

Pohlman is a prevailing party here, at least in some measure. Besides the material which the Court has determined must be disclosed, it is not clear whether other information that was provided to Pohlman after it filed this action would have been provided had it not filed the lawsuit at all. Pohlman, however, has not supported its

request for fees with any documentation as to the time expended on this law suit, and neither party has argued how the above factors should enter into the Court's decision on the amount of fees that would be appropriate in this case. Accordingly, the Court shall allow additional time for the parties to file pleadings on this issue, as set forth below.

## CONCLUSION

Accordingly,

 **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment is **GRANTED** in part and **DENIED** in part, as set forth above. [Doc. #19]

 **IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part. [Doc. # 23]

 **IT IS FURTHER ORDERED** that Defendant shall make all disclosures called for (items numbered II, III, IV, and VIII on pages 8-17 above) on or before October 20, 2005.

 **IT IS FURTHER ORDERED** that Plaintiff shall have up to and including October 20, 2005, to file a properly supported request for attorney's fees. Defendant shall have ten days thereafter to file a response, and Plaintiff shall have five days to reply to Defendant's response.


AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2005.